McGowan et al. v. Myers et al.

McGOWAN ET AL. v. MYERS ET AL.

1. **Receiver:** GARNISHMENT OF: NO PREFERENCE OBTAINED BY. A receiver is not subject to the process of garnishment; and so, where the court, at the instance of creditors who are lien-holders, appoints a receiver to take charge of the assets of an insolvent debtor, another creditor, who has a judgment but no lien, cannot, by garnishing the receiver, obtain a preference over other mere judgment creditors as to the surplus remaining in the receiver's hands after paying off the liens, even though the garnishment be made by leave of the judge under whose court the receiver acts.

2. ———: OF ASSETS OF INSOLVENT: SUBSEQUENT ASSIGNMENT BY INSOLVENT: EFFECT OF. Where an insolvent submits to the appointment of a receiver at the instance of some of his creditors, he cannot, by a subsequent assignment, give preference to certain of his other creditors as to what may remain in the receiver's hands after the satisfaction of those at whose instance the receiver was appointed. In such a case, the assets are in the hands of a court of equity for *equitable* distribution.

*Appeal from Davis District Court.*

FRIDAY, APRIL 24.

THIS is a controversy among the creditors of the defendant, T. B. Myers, an insolvent, as to the distribution of the proceeds of the sale of a stock of goods in the hands of a receiver, who, under the appointment of the court, took possession of the goods and disposed of them. The receiver was appointed on the petition of certain creditors. Certain other creditors, by leave of the judge of the court, garnished the receiver, and filed a petition of intervention in the action, claiming priority over other creditors by reason of said garnishment, and by reason of an assignment made by Myers. Other creditors, who had not garnished the receiver, demurred to the petition of intervention. The demurrer was overruled, and from this ruling this appeal was taken.

*H. S. Howell & Son* and *Payne & Eichelberger*, for appellants.

*S. S. Carruthers* and *Jones & Steele*, for appellee.

ROTHROCK, J.—I. The pleadings in the case dislose the following state of facts: Myers leased a store-room of the plaintiffs, McGowan and A. H. and William Hill, for the term of two years, and took possession thereunder on the first of November, 1882, and put a general stock of merchandise therein. He mortgaged the stock of goods to Bradley's Bank and to William J. Law and to A. W. Mendenhall. The mortgages became due, and Bradley's Bank and William J. Law took possession of the goods, and were proceeding to foreclose the mortgages. Thereupon the plaintiffs commenced this action, claiming that the rent due on the lease was a lien on the goods prior and superior to the mortgages, and asking that the foreclosure of the mortgages be transferred to the district court. An answer was filed by Myers, and all of the mortgagors appeared in the action, and on the twenty-third day of February, 1883, a decree was entered by consent of the parties, by which W. J. Law was appointed receiver of the property, and he was ordered to retain $1,000 of the proceeds, subject to the further order of the court at the final hearing, and that out of the balance of the proceeds of the goods he should pay the rent due to the plaintiffs, the current expenses of the receivership, and apply the balance to the payment of the mortgages in the order of their priority.

On the seventeenth of February, 1883, E. Mayer & Co. obtained a judgment against F. B. Myers for goods sold, and the same was filed with the receiver and established as a claim. Afterwards John V. Farwell & Co. and Henry Price recovered judgments against Myers, and filed the same, and established them as claims. On the twenty-ninth day of March, 1883, Carson, Pirie, Scott & Co., and a number of other creditors of Myers, presented a petition in vacation to the judge of the district court, setting forth that they were about to obtain judgments in said court against Myers, and that the receiver had in his possession a large amount of property not necessary for the payment of the claims of the original parties to the action, and praying that immediately

after obtaining judgment they be allowed to garnish the receiver. On the same day the judge made an order consenting that the receiver might be garnished as prayed. Other creditors afterwards sought and obtained the consent of the judge to garnish the receiver. After judgments were obtained, executions were issued thereon, and the receiver was garnished. The receiver filed a report showing about $650 in his hands after paying the mortgage liens, and the report was approved. Thereupon the creditors who had garnished the reciever filed their petition of intervention in the action, and claimed therein that their judgments should be held to be paid from the fund in preference to the judgments of Price, Mayer & Co. and Farwell & Co., because of the garnishment of the receiver. They also set forth that their judgments should be held prior and superior to the other judgment creditors by reason of an assignment, of which the following is a copy:

" For value received, I hereby sell, convey and assign unto Carson, Pirie, Scott & Co., S. Pollock & Co., Knox, Hill & Co., Ely, Walker & Co., Jackson & Hughes, Field, Thayer & Co., R. P. Smith & Sons, A. S. Gage & Co. and Chicago Chemical Works, all my right, title and interest in and to all personal property now in the hands of W. J. Law as receiver, or all such personal property as he of right ought to or could have in his possession as such receiver, including notes, accounts, goods or merchandise, as well as all other personal property which did or should have passed into the said W. J. Law's hands as such receiver, and I hereby authorize the said receiver to surrender to the above-mentioned parties all moneys and other personal property, or the proceeds thereof, which is now or may hereafter come into his hands as such receiver, after satisfying liens already on said property. This conveyance is made for the purpose of securing claims against me, now due, and belonging to the parties to whom this conveyance is made, respectively, and all amounting to something like one thousand dollars, and said property, or the

proceeds thereof, shall be divided among my creditors herein
mentioned *pro rata.*

"*Dated March* 31, 1883.

   [Signed]       "T. B. MYERS."

The creditors who had not garnished the receiver demurred
to this petition of intervention, and the demurrer was over-
ruled.

The first question to be determined, and that to which
counsel in their arguments have mainly directed their atten-
tion is, did the intervening creditors acquire any
rights over the others by reason of the garnish-
ment of the receiver? The garnishment was
served upon the receiver on the thirty-first day of March,
1883, in behalf of most of the intervening creditors. The
judgments of the creditors who did not garnish the receiver
were obtained after that time, excepting one which was ren-
dered in February, 1883.

In High, Rec., § 151, it is said: "The receiver's possession
being the possession of the court from which he derives his
appointment, he is not subject to process of garnishment as
to funds in his hands, or subject to his control, and such pro-
cess will be regarded as a nullity when directed against him."
Citing *Field v. Jones*, 11 Ga., 413. "When a receiver is
duly appointed of the effects of a co-partnership in an action
brought by a creditor of the firm, he cannot be garnished by
judgment creditors of the firm as to partnership assets in
his hands, such assets not being subject to garnishee process."
Citing *Taylor v. Gillean*, 23 Tex., 508.

There is no doubt that this is the general rule. Receivers
are appointed to take charge of and manage the property of
insolvent debtors for the purpose of husbanding the assets
and distributing the proceeds thereof among the creditors
according to equitable rules. A receiver, having the funds
in his possession, is the representative of the court. He is
said to be the mere hand of the court to hold the money and
property for distribution. The receiver is one of the agencies

employed by a court of equity to prevent unseemly scrambles among the creditors of an insolvent, and the wasting of the assets in useless and expensive litigation in courts of law.

Counsel for appellees concede that the general rule is that a receiver is not liable to garnishment, but they claim that, because appellees procured an order from the judge of the court in vacation permitting the garnishment to be made, they thereby acquired a prior claim upon the fund. There is a class of cases where creditors of an insolvent have been permitted by the court to institute proceedings against receivers for the purpose of establishing some claim or special right to a lien, or the like, against the assets; but we are not aware of any case where a mere general creditor of an insolvent has been held to acquire some right superior to another general creditor by an authorized garnishment of the receiver.

In *Noe v. Gibson*, ·7 Paige, Ch. 513, it was held that where property is rightfully in the hands of a receiver it is in the custody of the court, and cannot be distrained for rent, without permission of the court by whom the receiver was appointed, and any person who takes the property out of the possession of the receiver without such permission is guilty of a contempt, and that the proper course is for the landlord to apply to the court for an order that the receiver pay the rent, or that the landlord be at liberty to proceed by distress or otherwise, as he may be advised. All of these parties were general creditors. Their judgments were not liens upon the funds. The rule is that a general judgment does not attach as a lien upon personalty. At law, a lien can be acquired only by the levy of an execution upon the property. When, however, a court of chancery has in its custody personal property or money of an insolvent, it is probable that a judgment creditor has the right to intervene in the action in which the debtor is a party, and ask that the excess of the fund, after paying the liens upon it, be applied in payment of his judgment. That was the position of these parties in the court below. All of them made claim to the fund, and

we think that, as " equality is equity," it should not be held that any superior right was acquired by the garnishment.

It is further claimed by counsel for appellees that the rule that a receiver is not subject to garnishment has no application where the original parties to the action are lienholders, and where, as in the case at bar, all of the claims of the parties to the action can be paid from the fund, and a surplus left for other creditors not original parties to the suit. In answer to this position it is sufficient to say that we find no case in which any such a distinction is made, and it does not commend itself to us as a distinction that ought to made. The very rule itself is founded upon the thought that there are creditors not parties to the action.

II. It remains to be determined whether or not appellees acquired any superior rights over the appellants by reason of the assignment in writing made by T. B. Myers. We think that, as the fund was not the subject of garnishment or seizure in any manner by the creditors, and as it was in the hands of the receiver in an action in which Myers was a party, and as he made no resistance to the appointment of the receiver, and did not appeal from the order of appointment, he had no control over the fund, and no power to direct that it should be paid to one creditor in preference to another. The fund was in the hands of a court of equity, and he had no right to interfere with its equitable distribution.

In our opinion the demurrer to the petition of intervention should have been sustained, and the fund should have been distributed *pro rata* among the appellants and appellees.

REVERSED.