J. D. WHEELER, RECEIVER GENERAL AMERICAN CASUALTY COMPANY ET AL V. EUGENE C. WILLIAMS ET AL.

No. A-6430. Decided April 2, 1958.
Rehearing overruled April 30, 1958.
(312 S.W. 2d Series 221)

384

*Josh H. Groce* and *Rudy G. Rice,* both of San Antonio, for relators.

*Hubert W. Green* and *Perry Rowan Smith,* both of San Antonio, and *Allen Wight,* of Dallas, for respondents.

Mr. Justice Smith delivered the opinion of the Court.

J. D. Wheeler, Receiver of General American Casualty Co., and Josh Groce, his attorney, acting under the direction of the Hon. Jack Roberts, Judge of the 126th District Court of Travis County, Texas, have applied to this Court for a writ of mandamus and correlative writs which would have the effect of staying proceedings in a certain cause filed in the 131st District Court of Bexar County, Texas until a pending case could be disposed of by the Travis County District Court.

A complete history of the two cases and a chronological presentation of the various pleadings, motions, and orders is essential to an understanding of the case. J. D. Wheeler, Receiver of General American Casualty Company, and Josh H. Groce, his attorney, are the relators in this case. In the application for the writ of mandamus and correlative writs, complaint is made of respondent, Honorable Eugene C. Williams, Judge of the District Court, 131st Judicial District, Bexar County, Texas, and C. B. Erwin, R. B. Cowden, George Cowden, D. J. Schwarz, General Securities, Inc., a Texas Corporation maintaining its principal place of business in Bexar County, and Hubert W. Green and Perry Rowan Smith, residents of Bexar County and attorneys of record for the respondents, C. B. Erwin et al. and Republic National Bank of Dallas, a national banking corporation maintaining its principal place of business in Dallas

County, Texas, and its attorney of record, Allen Wight, a resident of Dallas, County, Texas.

For convenience, and in the interest of brevity and with due regard for the honor and dignity of the persons, office, and courts involved, we respectfully hereafter adopt the following designations throughout this opinion: J. D. Wheeler will be referred to as Receiver; the District Court of the 131st Judicial District, Bexar County, Texas, will be referred to as the Bexar Court; the District Court, 126th Judicial District, Travis County, Texas, Honorable Jack Roberts, will be referred to as the Travis Court; General American Casualty Company will be referred to as General American, and Republic National Bank of Dallas will be referred to as Republic National.

On June 17, 1954 General American was placed in temporary receivership in the Travis Court and J. D. Wheeler was appointed temporary receiver in Cause No. 98,764, styled: The State of Texas v. General American Casualty Company. The order of June 17th instructs the temporary receiver to report to the Travis Court on the possibility of his being able to rehabilitate General American, and the Travis Court set the matter for a further hearing to be held on July 6, 1954. On that date the hearing on the matter of rehabilitation of General American was begun and was concluded on July 7, 1954, when the Travis Court entered its final judgment after reciting, among other things, that General American was hopelessly insolvent, and that no specific plan for rehabilitating the company had been presented, appointing J. D. Wheeler permanent Receiver and placed all assets and properties of General American, wherever situated, in his custody. The judgment specifically restrained and enjoined all persons from interfering in any manner with the Receiver in the performance of his duties.

On July 26, 1954 the named respondents above, by their attorneys, with the exception of the Honorable Eugene C. Williams, the Republic National, and its attorney, filed in the Bexar Court Cause No. F-88024, styled R. B. Cowden et al v. J. D. Wheeler, Receiver, General American Casualty Company, the defendants being the Receiver and General American. On August 19, 1954 the Receiver and General American filed their answer alleging that the Republic National was a necessary and indispensable party, and continued the answer with a general denial. They further prayed the indulgence of the court alleging that, due to the fact that the Receiver was in the process of investigating the complex affairs of General American, a

reasonable time should be allowed for that purpose, and therefore the cause should not be set for trial in the immediate future and not until the Receiver had had a reasonable opportunity to familiarize himself with the affairs of the General American. The Republic National was made a party plaintiff.

Briefly, the suit pending in the Bexar Court involves primarily a question of priorities of liens against certain property, real and personal, described in deeds of trust and mortgages executed by General American to secure its indebtedness to Republic National. The bank alleged that it was the holder in due course of certain notes for which General American was primarily liable and that such notes were secured by the liens above mentioned. It was further alleged that approximately $1,000,000 was borrowed by the plaintiffs from Republic National for the benefit of General American and that such indebtedness was incurred for the use and benefit of General American and that it received all the money so borrowed which was in the years 1952, 1953, the last loan being in April 1954. The plaintiffs further allege that they are each liable on the notes involved in the suit in the Bexar Court and that the Receiver does not acknowledge the validity of the deeds of trust and various other instruments of indemnity and security, including mortgages, executed by General American; and, therefore, the Bexar Court should declare and fix the rights, status, and other legal relations between plaintiffs and General American and the Receiver thereof in relation to the several deeds of trust and other instruments, and the status of the plaintiffs as beneficiaries of the indemnities and the securities given and allowed by General American. The petition of Republic National as a party plaintiff prays that it be recognized at all times as the real party plaintiff and that the issues in this suit so far as it and other parties are concerned should be tried in Bexar County in the Bexar Court and that venue properly lies in said court.

On December 30, 1955 the relators filed in the Travis Court Cause No. 103,084, styled: J. D. Wheeler, Receiver v. C. B. Erwin et al. This suit was against 52 defendants, 26 of them being residents of Bexar County, 2 resided in Travis County, and the remainder resided in other parts of the State. Included as defendants are the plaintiffs, including the Republic National, in the suit pending in the Bexar Court. The petition is voluminous, being 300 pages in length, but essentially the nature of the cause of action alleged is a conspiracy on the part of the defendants to defraud certain insurance companies and their successor the General American, and the claimants, creditors,

policy holders, and stockholders of those companies and the general public. The petition alleges in detail facts involved in the loan transactions which are involved in the suit in the Bexar Court. It was further alleged that none of the purported loans described in the Bexar suit were carried in the General American's records and sworn annual statements as liabilities, nor were the deeds of trusts or other instruments executed as security for such loans carried as liabilities, but, on the contrary, the proceeds from such loans were carried as contributed surplus. Although the petition alleges fraud on the part of plaintiffs, Erwin et al., in having General American execute to them deeds of trust which they seek to have declared valid in the Bexar Court suit, it does not allege any fraudulent acts on the part of Republic National and the plaintiffs, Erwin et al., in connection with the loans. Neither does the petition allege that any fraudulent acts on the part of Republic National and the plaintiffs, Erwin et al., in connection with the loans. Neither does the petition allege that the Republic National had any knowledge of the alleged fraudulent acts and conduct that would put it on notice of any fraudulent conduct that would render the notes and liens subject to cancellation. In any event, all the issues can be tried in the Bexar suit.

On April 5, 1957, the Bexar Court, at a pre-trial conference, entered its order setting the cause for trial for the month of June 1957.

On May 6, 1957, the Receiver filed a motion in the Bexar Court to: (a) transfer the Bexar suit to the Travis Court, or (b) dismiss the suit, or (c) stay the trial of such suit.

We might state here that after the filing of the Travis Court suit on December 30, 1955, the relators filed no pleadings attacking the jurisdiction of the Bexar Court or challenging venue of such suit, or the propriety of any judge to exercise any powers, discretionary, or otherwise, in the Bexar Court until the above motion was filed. The judgment, dated June 27, 1957, overruling the motion, is one of the orders involved here.

On January 28, 1956 the respondents, Erwin et al., filed their pleas of privilege, pleas in abatement, motion to sever, and answer in the suit filed December 30, 1955 pending in the Travis Court.

On May 20, 1957 the Travis Court overruled the pleas in abatement of all parties plaintiff in the Bexar Court, including

the Republic National. The order recites that the Receiver's prayer for injunctive relief was denied. The court, in denying the injunction stated: "* * * but it having been made known to the Court that such plea was not sufficient at this stage for the granting of injunctive relief, the Court thereupon announced that he would not grant injunctive relief at this time, but would await further action, if any, on this particular matter." The matter of the plea in abatement and the ruling of the Travis Court will be discussed later in this opinion.

On June 11, 1957 the Receiver's motion to transfer, dismiss, or stay filed in the Bexar Court on May 6, 1957, came on to be heard and the hearing and consideration of the motion continued until June 27, 1957. On that date the court entered its judgment overruling the motion. The judgment appears herein as footnote 1 below.

---

1.                                          "NO. F-88,024
"R. B. COWDEN, ET AL
            VS.
J. D. WHEELER, RECEIVER, ET AL
IN THE DISTRICT COURT
OF BEXAR COUNTY, TEXAS
37TH JUDICIAL DISTRICT

"On thes 11th day of June, 1957, came on to be heard the Motion of defendant, J. D. Wheeler, Receiver, to transfer this cause to the 126th District Court of Travis County, Texas, or in the alternative to dismiss this cause, or in the further alternative for the court to stay this action pending disposition of Cause No. 103,084 now pending in Travis County; and the answer thereto of plaintiffs R. B. Cowden, et al, and in pre-trial for the settlement of the issues herein, and for a trial date; and the parties appeared by their attorneys and announced ready, and the Court heard the evidence, and at the conclusion thereof requested briefs on the law. That said briefs were furnished and the same were thereafter from day to day considered by the Court, and the evidence reviewed, and from the evidence the Court finds, among other things:

"That plaintiffs' suit herein was brought in good faith, and with the intention of obtaining an expeditious determination of the issues involved for the purpose of protecting alleged substantial rights of plaintiffs; that the termination of the uncertainty and controversy set out in the Petition would avoid or reduce continuing loss and injury to assets in which plaintiffs claim an interest; that since the filing of this suit plaintiffs have prosecuted the same with diligence; that there is no evidence that at the time the suit was filed the Receiver had or claimed any cause of action against plaintiffs (except as to the controversy evidenced in plaintiffs' Petition herein), or that said Receiver intended to file any suit or that any suit against these plaintiffs was imminent or impending or threatened or anticipated by plaintiffs; that at the time this suit was filed and for more than a year thereafter defendant Receiver made no complaint of the pendency of this suit or the jurisdiction of the Court, or of the discretion, right, or propriety of the Court to exercise the jurisdiction invoked by this suit, and neither by pleading, motion or suggestion to this Court, nor by statement, complaint or advice to plaintiffs did said Receiver indicate his dissatisfaction with the continued exercise of jurisdiction herein by this Court; on the contrary the Receiver acquiesced in the active exercise of jurisdiction by this Court, and affirmatively obtained judicial relief in specific matters from the receivership court in Travis County, on the basis of the trial and rendition of final judgment herein in Bexar County.

"The Court further finds that this suit was not filed with any intention or

Exception to this action of the court was entered by the Receiver et al. Erwin et al. also excepted to the action of the Travis Court in overruling their pleas in abatement.

On June 27, 1957 the District Judge of the Travis Court entered an order holding that the judgment of the Bexar Court was in direct conflict with the Travis Court order of May 20, 1957 overruling the pleas in abatement of former suit pending. The order expressed the opinion that "under the decision of the Supreme Court of Texas in the case of V. D. Anderson & Co. v. Young, 128 Texas 631, 101 S.W. 2d 798, this Court is the Court of dominant jurisdiction and should be permitted to try this case without interference from any other court, and that steps should be taken to prevent such interference." The order closes with the following: "It is, therefore, ordered, adjudged and decided that J. D. Wheeler, Receiver, and Josh H. Groce, Attorney for the Receiver, are hereby directed to institute mandamus or othr appropriate proceedings in the Supreme Court of Texas for the purpose of finally settling any question of dominant jurisdiction between this Court and the District Court, 131st Judicial District, Bexar County, Texas."

The application, of course, has been filed, and the respon-

---

purpose of interfering, hampering or in any manner inconveniencing or embarassing defendant Receiver, or the receivership court, in the duties of the Receiver or conduct of the receivership or, Receiver's custody and possession of the receivership assets, nor was the suit brought to interfere in any manner with the custodia legis of the receivership court; nor has the conduct of the case subsequently interfered with, hampered or inconvenienced the Receiver, or the receivership court or the custodia legis of the Court and Receiver; nor will the trial and final disposition do so. That said Receiver has had from the beginning of the receivership and during the pendency of this suit had, and now has, possession and control of all property real and personal, involved in this suit (except such notes, contracts and personal property as was in the actual possession of the Republic National Bank of Dallas under claim of lien at the date of the Receiver's appointment), without objection by plaintiff herein.

"The Court being of the opinion that under the evidence herein, and after fully considering the law as set forth in the several biiefs of the parties, that the aforesaid Motion of defendant Wheeler, as Receiver, ought to. be overruled, the same is hereby overruled. It further appearing to the Court that the pleadings of the parties hereto should be settled and issues determined, and the cause be set for trial, accordingly it is further ordered that if defendant Receiver desires to amend and file an answer and a cross-action herein, that the same shall be filed within such time so as to give reasonable opportunity to plaintiffs to prepare to meet the new matter before such trial, and such reasonable time shall be such as to permit the cause to proceed to trial after allowing the preparation time aforesaid, no later than sixty (60) days from the date that this Order was decided and announced, June 20th, 1957.

"To the foregoing Order defendant Receiver hereby excepts.

"Signed this 27th day of June, 1957.

      "/sgd/  Eugene C. Williams
             Eugene C. Williams
             Judge 131st District Court, Presiding"

dents, with the exception of Judge Williams, have filed a reply which closes with the following prayer: "Wherefore, Respondents pray that all relief prayed for by Relator shall be denied; that the Order of this Court shall direct the Honorable Eugene C. Williams to proceed with the Bexar County case in due course, and such ancillary or other orders and rulings shall be made in accord therewith; * * *." The Honorable Eugene C. Williams, Judge of the 131st District Court, Bexar County, Texas, and a respondent in this cause, has filed an answer, which reads in part as follows:

"This Respondent is the Judge of the 131st District Court of Bexar County, and I conducted the hearing in the Motion filed by Mr. Groce as attorney for Receiver in No. F-88,024, pending in the 37th District Court of Bexar County, and the hearing of which Motion was assigned to me for trial by Honorable Delos Finch, presiding Judge, and which hearing resulted in the Order made by me on June 20th, 1957, but reduced to writing and signed August [June] 27th, 1957, and which is before the Supreme Court as Exhibit 27 of Respondents' R. B. Cowden, et al reply to the Mandamus. The Order aforesaid made by the undersigned was the occasion for the Application for Mandamus, and the relief sought by Relator.

"This Respondent, as Judge of said Court, is subject to the directions and orders of the Supreme Court of Texas, such as may be made and rendered in the proceedings here involved, and awaits the determination of the Supreme Court, and will, of course, comply with the directions of that Court."

■ There can be no question but that the Bexar Court first acquired jurisdiction of the parties and subject matter. When suit in that court was filed jurisdiction attached immediately, and the rule announced here is that under the record in this case, jurisdiction could not be taken away or arrested by the subsequent proceedings in the Travis Court. There is nothing in this record that remotely indicates the prosecution of the Bexar suit would in any legal manner interfere with the Receiver in his posssssion, custody, control, and disposition of the property.

Under the general rule of law applicable, the respondents had the right to bring their suit in the Bexar Court against the Receiver. See Articles 2310 and 2311, Vernon's Annotated Civil Statutes of Texas; Kirby v. Dilworth and Marshall (Comm. App.), 260 S.W. 152; Prince v. Miller, 123 Texas 118, 69 S.W. 2d 52. In the case of Kirby v. Dilworth and Marshall, supra, the Court said:

"If the adjudication by the District Court of Bexar County of the existence of a lien on the property in favor of the defendants in error to secure their debt, if a debt be found owing to them, will not interfere with the possession, control, and disposition of the property in the hands of the Receiver, then defendants in error have the right to have that Court determine the question of their lien. Otherwise, they have no such right. We think the adjudication of defendants in error's right to a lien on the property would in no wise interfere with the Receiver's possession of the property. Neither actual possession of the property nor constructive possession of the property is in any manner involved in the question of adjudicating the matter of a lien in favor of or against either of the parties to this suit. The determination of the question of whether or not a lien exists in favor of defendants in error of any of the property in the Receiver's hands has no more effect upon the possession of that property than does the adjudication of the question of whether or not defendants in error have a debt owing to them as alleged in the pleadings. Both questions are purely abstract, and are entirely disassociated with any character of physical relation to, or mental attitude toward, the actual property."

We think the reasoning thus announced is peculiarly applicable to the present case.

It is true the Travis Court suit involves other parties and issues not involved in the Bexar Court. This does not mean that such fact can be said to oust the Bexar Court of jurisdiction by merely adding parties and issues. There is no question but that the Bexar Court has jurisdiction to determine the controversy between the parties to that suit, and that the addiional parties in the Travis Court are unnecessary to a determination of the issues in the Bexar Court.

"It is well sttled that, where two actions involving the same subject-matter are brought in different courts having coordinate jurisdiction, the Court which first acquires jurisdiction, its power being adequate to administer full justice to the rights of all concerned, should retain such jurisdiction, undisturbed by the interference of any other Court, and dispose of the whole controversy." Lancaster v. Lancaster 155 Texas 528, 532, 291 S.W. 2d 303, 305. See Texas Trunk Ry. Co. v. Lewis, 81 Texas 1, 8, 16 S.W. 647, 648, 26 Am. St. Rep. 776; Way & Way v. Coca Cola Bottling Co., 119 Texas 419, 29 S.W. 2d 1067; McCurdy v. Gage, 123 Texas 558, 69 S.W. 2d 56, 59, 75 S.W. 2d 1107.

■ It further seems apparent that this proceeding which was filed in this Court under order of the District Court of Travis County does not have for its purpose the securing of an order directing either the Bexar Court or the Travis Court to proceed to trial. Both judges appear willing to try the case. Essentially this action from relator's standpoint is one seeking to restrain the Bexar Court from proceeding to trial while allowing the Travis Court to try the case. For this reason, among others, the application of the relators may well be denied. Hursey v. Bond, 141 Texas 337, 172 S.W. 2d 305; Ashford v. Goodwin, 103 Texas 491, 131 S.W. 535; Kemp v. Wilkinson, 113 Texas 491, 259, S.W. 912.

■ Relators contend that under the holding in the case of V. D. Anderson Co. v. Young, 128 Texas 631, 101 S.W. 2d 798, the order of the Travis Court overruling respondents' plea in abatement gave that court dominant jurisdiction and that it should be permitted to try the Travis suit without interference of any other court. With this contention we do not agree. The respondents, who were plaintiffs in the Bexar Court, filed their plea of privilege and plea in abatement in the Travis Court. The plea of privilege is not involved here and therefor will not be further mentioned. The plea in abatement alleged that the suit filed on December 30, 1955 in the Travis Court involved the same parties and the same cause of action as was involved in the cause filed by them on July 26, 1954 in the Bexar Court; that since the parties and causes of action in the two suits were the same, and since the cause pending in the District Court of Bexar County was first filed and there pending, and since judgment in the first filed suit would be determinative of the issues, the Travis County suit should be dismissed, or, in the alternative, should be abated. The reply to the plea in abatement, like the petition filed by relators in the Travis Court, did not contain any allegations raising an issue of fact to be detrmined by the Travis Court on the hearing of the plea in abatement. The reply did not allege that the Bexar suit was filed in bad faith for the purpose of fraudulently obtaining jurisdiction in Bexar County, nor any other fact issue that would deprive the Bexar Court of prior active jurisdiction. We have heretofore in this opinion pointed out that the pleadings did not raise the question that the District Court of Bexar County would not be able to maintain venue because of lack of necessary parties. The motion to dismiss the Bexar suit and the contest of the plea in abatement likewise failed to raise any fact issue as to necessary parties much less such fact issues as found in the Anderson case, supra. Our case is clearly distinguishable from that case. The Anderson case,

supra, involved a conflict of jurisdiction between the 44th Judicial District Court of Dallas County and the 31st Judicial District Court of Wheeler County, Texas.

In that case the plea in abatement filed in the second suit and the reply thereto raised an issue of fact as to whether the suit filed in Wheeler County, Texas, was filed prior to the suit filed in Dallas County, Texas, as a result of fraud practiced by the plaintiffs in the Wheeler County case on the attorneys in Dallas County case, the contention being that the alleged acts of fraud caused the opposing attorneys to delay the filing of the suit in Dallas County.

In passing upon the questions thus presented, this Court stated:

"* * * In the case at bar both the district courts involved have potential jurisdiction of the subject matter of this litigation. The real question at issue is which of such courts ought to be allowed to exercise active jurisdiction. * * *" [V. D. Anderson v. Young, 128 Texas 631, 101 S.W. 2d 800.]

The Court in the Anderson case then announced again the well settled rule of law that where a suit has been first filed in a court of competent jurisdiction, and such court has all necessary parties before it, or has the power to bring them before it, it has the prior right to exercise jurisdiction of such case, and no other court in which a subsequent suit is filed has the the right to interfere. Citing Cleveland v. Ward, 116 Texas 1, 285 S.W. 1063, and Conn v. Campbell, 119 Texas 82, 24 S.W. 2d 813.

The Court then stated another well settled rule of law which we think operates as an exception to the general rule. The Court stated the rule to be that "* * * a party may be guilty of such conduct relating to the matter as to estop himself from asserting the prior active jurisdiction of a court in which a suit is first filed over another court in which a suit is subsequently filed involving the same subject matter and parties." It is this exception that went to the very heart of the issues involved in the Anderson case and no doubt prompted this Court to hold that the reply and contest of the plea in abatement raised pertinent issues of fact, and that such issues ought to be tried in the District Court of Dallas County where the second suit was pending.

In our case we do not have the fact issues of bad faith, fraud, and deceit such as were stated to be involved in the Anderson case. We have no issue as to whether the Bexar County District Court can subject all necessary parties to its jurisdiction. In our case, the relators filed a plea in abatement in the Bexar Court alleging that the Republic National was a necessary party. After the bank was made a party plaintiff the suit remained on file for many months and no additional pleas in abatement were filed. There are no pertinent issues of fact raised by the contest to the plea in abatement. It follows that there is no reasonable basis for holding that the trial in the Bexar County case should be postponed until final judgment in the Travis County case.

■ While as above pointed out, respondents prayed that the Bexar Court be ordered to proceed to trial, the answer of the judge of that court demonstrates that such action is wholly unnecessary and that except for the present cause pending in this Court, he would have proceeded to trial.

The application of relators for a writ of mandamus and corollary writs is denied. Likewise, and for the reason stated, respondents' prayer for affirmative relief is denied; no necessity therefor being shown.

Opinion delivered April 2, 1958.

MR. JUSTICE GRIFFIN joined by JUSTICE GARWOOD, dissenting.

The writer drew this case upon its submission and with the exception of the statement of facts, which has been omitted, the following was submitted as the proposed opinion for the Court. The majority of the Court did not see fit to agree so it is filed as a dissenting opinion.

Unquestionably, the filing of the pleas in abatement in the Travis County District Court case by the plaintiffs in the Bexar County District Court case was the right and proper thing to do, and required by our decisions. Russell v. Taylor, Texas Comm. App., 121 Texas 450, 49 S.W. 2d 733; Gage v. McCurdy, Texas Civ. App., 60 S.W. 2d 468, affirmed 123 Texas 558, 69 S.W. 2d 56; Anderson v. Young, 128 Texas 631, 101 S.W. 2d 798; Lancaster v. Lancaster, 155 Texas 528, 291 S.W. 2d 303.

Under the general rule of law applicable, plaintiffs had the right to bring their suit in the Bexar County District Court

against the receiver. Article 2310 and 2311, Vernon's Texas Civil Statutes, 1925; Kirby v. Dilworth and Marshall, Comm. App., 260 S.W. 152; Prince v. Miller, 123 Texas 118, 69 S.W. 2d 52; Joiner v. Currin, Texas Civ. App., 118 S.W. 2d 652, no writ history. There is an exception to this well-established rule of law, and it is recognized and stated in Kirby v. Dilworth and Marshall (1), supra, as follows:

"However, that any court of this State, in which the receiver is authorized by the foregoing article [2310] to be sued, cannot legally interfere in any manner with the possession, custody, control and disposition of the property in the hands of the receiver, is elementary and indisputable."

See also Prince v. Miller, (1, 2) supra, and McCurdy v. Gage (4), supra.

Plaintiffs in the Bexar County Court rely upon Cleveland v. Ward, 116 Texas 1, 285 S.W. 1063, and contend that the suit having first been filed in the Bexar County Court, that court possessed exclusive jurisdiction to hear and determine the suit. In Cleveland v. Ward the first proceeding were had in the Johnson County case. The receiver appointed by the Dallas County District Court was in possession of the property and administering it without any objection by any parties. The parties to both causes of action were the same as were the causes of action asserted in both suits. In our case, the appointment of a receiver by the Travis County District Court was the first action taken. Under the rules of common law, no suit could be filed against the receiver in any court other than Travis County without the permission of the Travis County District Court. That rule has been abrogated by Articles 2310 and 2311 of Revised Civil Statutes, 1925, as amended. I have cited the cases above which recognize an exception to this statutory rule. In the McCurdy v. Gage case, supra, the Dallas County District Court, although the last court in which suit had been filed, was permitted to retain jurisdiction, and the receiver appointed by it was left in charge, even though suit had been first filed in the District Court of Gregg County. Cleveland v. Ward, supra, does not control this case.

From the exhibits before us I find that the instruments which plaintiffs in the Bexar County case are seeking to uphold, and thus give the plaintiff prior rights and claims to assets of General American superior to the rights and claims of the receiver, include practically all the assets of General American. The in-

struments included, among others, transfer of the premium income of General American in the sum of $399,000.00 and a later one for $750,000.00; transfer of $542,000.00 worth of agency accounts receivable of General American, as well as the other transfer and assignments hereinafter discussed. On April 15, 1954, the board of directors ratified and confirmed the previous deeds of trust and transfers of assets for the specific purpose of indemnifying the two Cowdens, Schwarz, and Erwin from any individual loss by reason of having guaranteed the $750,-000.00 loan from the Bank on December 23, 1953. On April 17, 1954, General American, acting through and by its board of directors, executed a note for $450,000.00 to the individuals last above named, and secured said note by deed of trust on the two buildings in San Antonio belonging to General American—subject to the first liens against each of said buildings, and further conveying practically all of the tangible assets of General American in the form of first mortgage notes, stocks and bonds as further security for said $450,000.00 note. On April 26, 1954, two deeds of trust were executed and delivered to take the place of the one deed of trust of April 17, 1954. One deed of trust conveyed the two buildings and all the other assets of General American, and again agreed to indemnify the two Cowdens, Schwarz, and Erwin against all personal loss. From the record before us, I see that practically all of the assets of General American were pledged to the two Cowdens, Schwarz, and Erwin, and it is these instruments which the plaintiffs are seeking to have validated and upheld in the Bexar County suit. Thus it is seen that the Bexar County suit seeks control of all the assets of General American as against the receiver. The plaintiffs in the Bexar County suit pleaded that "until the court hears this case and fixes and declares the rights of the respective parties hereto, *neither the Receiver nor plaintiffs will know what the Receiver may properly have available for distribution to the creditors, and to which creditors and in what amount,* this uncertainty arising from the fact that the Receiver does not recognize and acknowledge the priorities, securities, rights, and indemnity of plaintiffs as herein alleged." (Emphasis added). The assets are the same assets which had been placed in charge of the receiver by the order appointing him. The Bexar County suit would therefore not only interfere with the receivership court in control, management and disposition of the assets of General American, but the Bexar County suit is a contest with the receiver over such assets, and would deprive the receiver of assets, and leave only a dry receivership with nothing to administer for the benefit of the creditors of General American. Such action cannot be taken by the Bexar County suit, and

Judge Roberts of the 126th District Court of Travis County rightly overruled the plea in abatement filed by the plaintiffs in the Bexar County case, and rightfully retained jurisdiction to try and determine the Travis County cause of action.

In my view it follows that the Bexar County District Court should take no further action in the cause pending before it, except to dismiss or abate the same, pending the final disposition of the Travis County cause. The rule of law laid down by the majority in the present case will no longer apply by virtue of the provisions of Article 21.28, Sec. 4(e), Acts of 1955, 54th Leg., p. 737, ch. 267. This enactment repeals Articles 2310 and 2311 as far as liquidation of insurance companies is concerned. cerned.

Opinion delivered April 2, 1958.

Rehearing overruled April 30, 1958.